UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
DR. SAMIR HAMADA,

        Plaintiff,

-against-                                        **COMPLAINT**

                                                        **JURY TRIAL DEMANDED**

STATE UNIVERSITY OF NEW YORK AT
FARMINGDALE,

        Defendant.
------------------------------------------------------------ X

        Plaintiff, Dr. Samir Hamada, (hereinafter "Plaintiff" or "Dr. Hamada") by his attorneys, Slater Slater Schulman LLP, hereby submits this Complaint and complains of the Defendant, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complaints pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"). Plaintiff seeks damages to redress the injuries he suffered because of being exposed to discrimination, a hostile work environment, disparate treatment, and retaliation on the basis of his sex/gender, ethnicity, and national origin.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief, occurred within the Eastern District of New York.

## PROCEDURAL PREREQUISITES

4. On or about July 20, 2021, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against Defendant employer as set forth herein.

5. On or about June 20, 2023, the EEOC mailed a Right to Sue Letter to Plaintiff.

6. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

## PARTIES

7. Plaintiff Samir Hamada identifies as an Egyptian, Muslim, male and resides in Stratford, Connecticut.

8. Defendant State University of New York at Farmingdale ("SUNY") is a public university and an "Employer" as provided under applicable laws.

9. Defendant is a covered employer within the meaning of Title VII and at all relevant times, employed Plaintiff.

10. Plaintiff is a covered employee within the meaning of the Title VII.

## FACTS

11. Defendant SUNY hired Plaintiff on or around March 2017 as an Assistant Professor in the School of Business, Computer Systems Department.

12. Dr. Hamada started working at Defendant SUNY Farmingdale on or about September 2017.

13. Defendant SUNY hired Dr. Zhao one year later as an Assistant Professor at SUNY Farmingdale's School of Business, Computer Systems Department, and she was Dr. Hamada's peer.

14. Defendant SUNY employed both Dr. Hamada and Dr. Zhao in equivalent tenure-track positions.

15. In order to achieve tenure, tenure-track professors must participate in leadership roles in various campus committees and/or organizations. Chairing committees is a common way to filling this leadership requirement.

16. Jill O'Sullivan ("O'Sullivan") at all times relevant was employed by SUNY Farmingdale as the Chair of the Computer Systems Department, School of Business.

17. At all times relevant, O'Sullivan was the direct supervisor for Plaintiff and Zhao.

18. On or about December 3, 2020, O'Sullivan appointed Dr. Hamada and Zhao to be co-chairpersons of an academic committee called the "Self-Study Committee 2022" ("the Committee").

19. Right from the beginning of their co-chairpersonship of the Committee, Zhao assumed a primary role for herself while relegating Dr. Hamada to a secondary one. Zhao dictated Dr. Hamada's responsibilities. She made decisions without consulting Dr. Hamada. She engaged in communication with administrative officials and professors in the department without advising Dr. Hamada or seeking his input.

20. Dr. Hamada repeatedly asked Zhao to consult him when making decisions about the Committee and communicated his desire to work as a team with Zhao. It was at this point that the real reason for Zhao's dislike of Dr. Hamada emerged when Zhao stated that "**You are a male from the Middle East, and I know this culture very well.**"

21. Dr. Hamada was shocked by this blatant discrimination.

22. Zhao monopolized the Committee chairperson position, leaving Dr. Hamada without a meaningful leadership role.

23. O'Sullivan knew Zhao had wrongfully taken over the Committee but did nothing about it.

24. By her silence and ineffective leadership, O'Sullivan condoned, encouraged and/or emboldened Zhao discriminatory behavior to continue treating Dr. Hamada as an inferior instead of an equal co-chairperson.

25. Despite Zhao's power grab and O'Sullivan's acquiescence and/or support, Dr. Hamada continued to work with Zhao in good faith. When Dr. Hamada voiced disagreement with Zhao, he did so in a polite and professional manner. However, Zhao continued to treat Dr. Hamada as her inferior. She spoke down to him constantly.

26. In or around April 2021, Zhao's unprofessional behavior reached a new height. On or about April 29, 2021, Zhao shouted at Dr. Hamada during a Committee meeting and unfairly criticized his work for the Committee. Importantly, Zhao stated, "I'm going to kick you out of this Committee!" and then stormed out of the meeting without explanation.

27. Realizing she had crossed the line; Zhao went to O'Sullivan preemptively to complain that Dr. Hamada was difficult to work with. She only presented her side of the story.

28. O'Sullivan credited Zhao's story and agreed that Dr. Hamada was the problem. She did so without consulting Dr. Hamada or the other committee members, who could vouch for him. O'Sullivan made no effort to hear both sides of the story.

29. On or about April 30, 2021, O'Sullivan held a meeting to resolve the dispute from the day before. Zhao, however, did not show up to the meeting.

30. Instead, O'Sullivan removed Dr. Hamada from his co-chairmanship and from the Committee. She relegated Dr. Hamada to a "support role" for the Committee instead of a co-chair role. This "support" role would not give Dr. Hamada the leadership experience he needs to support his tenure application.

31. Dr. Hamada felt helpless, hopeless, and humiliated. He humbly asked for a meeting to try to clear the air.

32. In fact, on or about May 2, 2021, shortly after being removed from the Committee, Plaintiff went to the emergency room due to the stress and anxiety.

33. Thereafter, O'Sullivan conducted a MS Teams Meeting with Dr. Hamada and Zhao. Although O'Sullivan made a show of getting Dr. Hamada's perspective, she discounted and disregarded everything Dr. Hamada said. Her mind was already made up and could not be changed. She stood by her decision to remove Dr. Hamada from the Committee and make Zhao the sole chairperson.

34. Importantly, O'Sullivan explicitly warned Dr. Hamada in a MS Teams Meeting, "[i]f you go to the Dean with this issue, I will never, ever put you on a committee again." O'Sullivan made a direct threat of retaliatory action intended to prevent Dr. Hamada from escalating this issue to the Dean.

35. Defendant O'Sullivan said: "Samir do me a favor, go to the dean, he is going to be really tired of your garbage right now okay, and he will tell me to dissolve the committee and start a new one, and you know what I will have Zhao in that committee."

36. After O'Sullivan left the MS Teams Meeting, Zhao and Dr. Hamada continued the discussion. Zhao again repeated her discriminatory comments and said, "**You need to have a right attitude, not because you're a male**." She went on to say, "**I notice that you…it's**

5

**probably your culture. I understand Middle Eastern culture, Samir. I totally do. You have this macho thing deeply ingrained in you. There is some power struggle in your mind**"

37. Dr. Hamada was shocked and distressed to have his gender and ethnic background maligned in this manner again.

38. On or about May 11, 2021, Dr. Hamada reported these discriminatory comments to Richard Vogel, Dean of the School of Business, and O'Sullivan. He did so despite Defendant O'Sullivan's threat that she would "never, ever put [him] on a committee again."

39. Dr. Hamada also reported his complaints to SUNY Farmingdale State College's Human Resources department. For example, on or about May 13, 2021, Plaintiff made a complaint via email and explicitly stated "I feel I have been discriminated against, disrespected, humiliated, and my contributions to the self-study committee has been undermined. I believe this might be unlawful. I am requesting a formal investigation."

40. Despite his follow up attempts, no one in Human Resources ever acknowledged his complaint or responded to him.

41. On about May 11,20211, O'Sullivan removed Plaintiff as co-chair of the committee.

42. O'Sullivan via email also removed Plaintiff from all email communications regarding the committee which further impacted his ability to do his job.

43. This was clearly an act of retaliation caused by Plaintiff's discrimination complaint on May 13, 2021.

44. The ongoing discrimination, retaliation, and hostility caused Plaintiff to seek mental health assistance starting in or around June of 2021.

45. O'Sullivan continued to retaliate against Dr. Hamada in various ways, including refusing to complete Dr. Hamada's annual report unless he agreed to remove the Cyber Advising Committee entry, refusing to approve an online course he developed that already had approval from Distance Learning, and communicating with Dr. Hamada in a harsh, hostile, and inappropriately critical manner.

46. Ultimately, as a result of the ongoing harassment and discrimination, on or about August 2021, Plaintiff was forced to resign from SUNY Farmingdale.

47. After Defendant forced Plaintiff to leave his employment, he started a new job with a lower salary and forced to restart his tenure track.

48. The ongoing discrimination and retaliation caused Plaintiff undue stress and anxiety and resulted in another visit to the emergency room on or about November 10, 2021.

49. On or about January 3, 2022, Plaintiff had stents placed in his heart.

50. The stress of the work environment at SUNY caused Plaintiff serious physical and emotional injuries.

51. Zhao discriminated against Dr. Hamada based on his sex/gender, ethnicity, and national origin by harassing him and creating a hostile work environment.

52. SUNY's supervisor O'Sullivan condoned and allowed Zhao to treat Plaintiff in a discriminatory manner.

53. SUNY did not provide any remediation of the workplace despite notice and as a result are liable for the conduct of its employees.

54. As a result of Defendant's continued harassment, Plaintiff suffered numerous injuries including economic and emotional damages.

55. Due to the harassment by Defendant, Plaintiff suffers from high stress and anxiety.

56. Plaintiff suffered emotional pain, suffering, inconvenience, and other non-pecuniary losses.

57. Upon information and belief, the discrimination will continue after the date of this complaint. Plaintiff hereby claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

58. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendant.

59. The above are just some of the examples of unlawful conduct to which Defendant subjected Plaintiff to on an ongoing basis.

60. Defendant intentionally discriminated against Plaintiff based on his basis of his sex/gender, ethnicity, and national origin and because of his lawful complaints of discrimination.

61. Defendant exhibited a pattern and practice of not only discrimination but also retaliation.

**AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER TITLE VII**
**(Not Against Any Individual Defendant)**

62. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

63. Plaintiff was an employee within the meaning of Title VII of the Civil Rights Act, 42. U.S.C. § 2000e(f).

64. At all relevant times, Defendant SUNY Farmingdale employed in excess of fifteen (15) employees and was an employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(b).

65. Pursuant to Title VII, 42 U.S.C. § 2000e-2(a) it is unlawful for an employer to discharge an employee because of such employee's sex/gender, ethnicity, and national origin.

66. Defendant violated Plaintiff's rights under Title VII when Defendant created and maintained a hostile work environment and discriminated Plaintiff based on his sex/gender, ethnicity, and national origin.

67. Defendant also violated Plaintiff's rights under Title VII because the hostile work environment and discrimination on basis of his sex/gender, ethnicity, and national origin led to Plaintiff's constructive discharge/termination.

68. But for Plaintiff's sex/gender, ethnicity, and national origin, Plaintiff would not have been constructively discharged/terminated.

69. Defendant's unlawful acts were intentional, willful, malicious and in reckless disregard of Plaintiff's rights.

70. As a result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer damages, in form including, but not limited to, lost income, bonuses, lost future earnings and also suffered future pecuniary losses, severe emotional distress, mental anguish, humiliation, loss of enjoyment of life, pain and suffering, and other non-pecuniary losses.

**AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER TITLE VII**
**(Not Against Any Individual Defendant)**

71. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

72. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has

9

    made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

73. Defendant SUNY Farmingdale engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of Defendant.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff demands judgment against Defendant in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.


Dated: September 12, 2023
       Melville, New York

                                                SLATER SLATER SCHULMAN LLP

                                                *John C. Luke, Jr.*
                                                John C. Luke, Jr.
                                                445 Broad Hollow Road, #419
                                                Melville, NY 11747
                                                631.420.9300
                                                *Attorney for Plaintiff*

## **DEMAND TO PRESERVE EVIDENCE**

Defendant is hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, causes of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, computer databases, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.